UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWN R. CSILLAG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-02750-RLY-TAB |
| ) | |
| NANCY A. BERRYHILL, ACTING ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT FOR REVIEW**

Plaintiff Dawn R. Csillag applied for disability insurance benefits in July 2013, alleging disability beginning on June 26, 2013. Her claim was denied initially and upon reconsideration. Csillag, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge on December 2, 2014. On February 20, 2015, the ALJ issued her decision, finding Csillag not disabled.

**I. Background**

At step one, the ALJ found that Csillag has not engaged in substantial gainful activity since the alleged onset date. [Filing No. 8-2 at ECF p. 18.] At step two, the ALJ found that Csillag has the following severe impairments: degenerative disc disease, Morton's Neuroma, and plantar fasciitis of both feet. [Id.] The ALJ also determined that Csillag has a non-severe cardiac impairment. [Id. at 18-19.] At step three, the ALJ concluded that no impairment or combination of impairments meets or equals a listing. [Id. at 19.]

At step four, the ALJ found that Csillag has the residual functional capacity to perform sedentary work, except she can never climb ramps, stairs, ladders, ropes or scaffolds; she can occasionally balance, stoop, crouch, kneel, and crawl; she can have occasional exposure to wetness and slippery, uneven surfaces; and she requires an assistive device to walk. [Filing No. 8-2 at ECF pp. 19-20.] Based on this RFC finding, Csillag's age, education, and work experience, and testimony from a vocational expert, the ALJ determined that Csillag was able to perform work that exists in significant numbers in the national economy such as document preparer, ticket checker, and final assembler. [*Id.* at 25-26.] Therefore, the ALJ concluded that Csillag was not disabled. [*Id.* at 26.] The Appeals Council denied Plaintiff's request for review, and this appeal followed.

## II. Standard of Review

The Court must uphold the ALJ's decision if it is supported by substantial evidence and applies the correct legal standard. *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

## III. Discussion

Csillag raises three main arguments on appeal, but the first is outcome determinative, so it is the only one discussed in this decision.[1] Csillag argues that the ALJ failed to explain the finding that Csillag's impairments do not meet or equal Listing 1.04 and failed to obtain a medical opinion on the issue of whether Csillag equals that listing. The Magistrate Judge agrees that the ALJ erred at step three by failing to obtain an updated medical opinion on medical equivalence and this error requires a remand.[2]

---

[1] Csillag also argues that the ALJ erred in assessing Plaintiff's credibility and in crafting the hypothetical to the vocational expert.
[2] On remand, the ALJ should reassess Csillag's credibility and clearly articulate a hypothetical to the vocational expert, reflecting all of Csillag's limitations supported in the record.

An ALJ must consider a medical expert's opinion on the issue of whether a claimant's impairment equals a listing. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). The record contains two separate Disability Determination Transmittal reports signed by state agency medical physicians on August 23, 2013 and October 28, 2013. [Filing No. 8-3 at ECF pp. 2-3.] The physicians reviewed Csillag's medical records and concluded that she was not disabled. The ALJ may properly rely on the opinions of these medical experts in deciding whether Csillag meets or equals a listing. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). However, under a Social Security Ruling in effect at the time of the ALJ's decision, but since rescinded, an ALJ "must obtain an updated medical opinion from a medical expert ... [w]hen additional medical evidence is received that ... may change the State agency medical … consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p.

Csillag cites several pieces of medical evidence that post-date the state agency physicians' findings that she did not meet or equal a listing:

    **(1)** An August 31, 2013 MRI of her lumbar spine which showed, among other things, generalized disc bulge and moderate disc protrusion at L5-S1 with mild left SI impingement and minimal lower lumbar facet degeneration. [Filing No. 8-12 at ECF pp. 45-46].

    **(2)** Her treating physician Dr. Kurt Hull's record from September 13, 2013, noting that Csillag's MRI showed "degenerative disc disease at L5-S1 with nerve root involvement" and that her symptoms, including fatigue, low back muscle pain, stiffness in the morning, and tingling and numbness in both legs "are

consistent with this diagnosis." [Filing No. 8-12 at ECF p. 344.] Csillag was treated with a lumbar epidural steroid injection. [Filing No. 8-13 at ECF p. 21.]

    **(3)** A November 22, 2013 MRI of Csillag's cervical spine showed mild to possibly moderate central spinal stenosis at C5-6 with possible mild chronic impingement of exiting left C6 nerve root and minimal to possibly mild central spinal stenosis at C6-7. [Filing No. 8-12 at ECF pp. 58-59.]

    **(4)** In February 2014, surgeon Robert B. Sloan, Jr., M.D., evaluated Csillag and noted that her lumbar MRI "demonstrates a left L5-S1 disc herniation with mild compression of the left S1 nerve root." [Filing No. 8-12 at ECF p. 65.]

    **(5)** Treatment records with her pain specialist Lydia Ferrell, M.D., from November 5, 2013 through April 4, 2014, document Csillag's complaints of pain and indicate exam findings of antalgic but steady gait, abnormal sensation bilaterally in the feet with (almost complete) numbness, and decreased range of motion in the lumbar spine. [*See* Filing No. 8-13 at ECF pp. 6-26.]

    **(6)** Treating pain specialist Anthony Mimms, M.D., noted in May 2014 that Csillag complained of pain radiating down both legs; pain in her shoulders and neck; and numbness, tingling, and burning. She reported that prolonged sitting, standing, walking and sleeping as well as bending, lifting and twisting increased her pain. She also reported that she falls often because her ankles give out. On exam, her motor strength, sensation and reflexes were normal, but she was tender at the SI (sacroiliac) joints, tender with spinal extension and to palpation of the medial borders of the scapulae with spasms, and she had a right

patellar knee bruise (which could corroborate her reports of falling). [Filing No. 8-13 at ECF pp. 6-7.]

**(7)** Dr. Mimms wrote in August 2014 that Csillag has back and foot pain and had fallen frequently due to the pain and that "it is my medical professional opinion that she would benefit from ambulating with a cane or a walker to help her navigate without the fear of falling and to allow her to be able to exercise." [Filing No. 8-12 at ECF p. 53.]

Thus, contrary to the Commissioner's assertion that Csillag "offers no evidence that she believe could have changed" the state agency reviewing physicians' opinions as to medical equivalence [Filing No. 15 at ECF p. 17], she has identified medical evidence that may change their opinions that she did not meet a listing.[3]

Csillag points to evidence relevant to Listing 1.04 for disorders of the spine, and it appears that the state agency physicians did not actually consider her impairments under this listing. [*See* Filing No. 8-3 at ECF p. 6 (only Listing 1.08 is identified under the section for "Adult Listings Considered"); *id.* at ECF p. 15 (same).] Listing 1.04 "describes spinal disorders (including herniated nucleus pulposus, … spinal stenosis, … [and] degenerative disc disease …), resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04). To satisfy 1.04C, the section addressed by the ALJ, there must be evidence of chronic, nonradicular pain and weakness and a resulting inability to ambulate effectively, as defined in

---

[3] This more recent evidence contrasts, for example, with an MRI from March 2012 that showed no disc protrusion or impingement and an MRI from July 25, 2013 that showed only mild disc space narrowing at L5-S1 and minor facet sclerosis. [Filing No. 8-12 at ECF pp. 8, 46.]

1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. The medical evidence shows that Csillag's nerve roots have been compromised, she suffers from pain, she has sensory loss, and she has a limited range of motion in the lumbar spine. The evidence also suggests that she often falls. Her treating pain specialist recommended she use a cane or walker, suggesting an inability to ambulate effectively. The state agency physicians considered none of this evidence. Thus, their opinions that Csillag does not meet or equal a listing are based on an incomplete view of the medical record.

As a result, the Magistrate Judge concludes that the ALJ erred in relying on the state agency physicians' opinions to find that Csillag did not equal a listing. And the ALJ's finding that Csillag's degenerative disc disease is not equivalent in severity to Listing 1.04 is not properly based on medical opinion or substantial evidence. Thus, a remand is appropriate. On remand, the ALJ must obtain an updated medical opinion on the issue of whether Csillag medically equals the severity of a listing.[4]

## IV. Conclusion

As discussed, this case should be remanded to allow the ALJ to make a proper disability determination and consider an updated medical opinion on medical equivalence. Therefore, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal [Filing

---

[4] The Magistrate Judge is troubled by the ALJ's consideration of the evidence regarding Csillag's ability to ambulate effectively. The listings identify examples of ineffective ambulation, including the inability to walk without the use of a walker, two crutches, or two canes. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b). The ALJ noted that Dr. Mimms recommended Csillag use a cane or walker, but discounts the need for a walker because "the evidence does not point to consistent and confirmed use of a walker to ambulate short distances" [Filing No. 8-2 at ECF p. 19], and treatment notes showed that despite an antalgic gait, Csillag walked steadily. Yet the ALJ cites medical records from late 2013 and early 2014, all of which predate Dr. Mimm's recommendation. There would be little reason to expect such records to confirm Csillag's use of a walker. And Csillag has a degenerative condition as her more recent MRI findings confirm. The ALJ also discredited Csillag's need for a walker based on the finding that she "could function independently, especially when her husband was travelling." [*Id.*] But the ALJ does not explain how Csillag's functioning was inconsistent with the use of a walker.

No. 10] and remand this action pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

DATED: 10/3/2017

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Electronic Distribution to All Counsel of Record